IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| JANE DOE, individually, and JOHN DOE, a minor, by and through his parent and next friend, JANE DOE,<br><br>            Plaintiffs,<br><br>    v.<br><br>JENNINGS COUNTY SCHOOL CORPORATION; SCOTT ALCORN, in his individual capacity; TANYA PERRY, in her individual capacity; LM INSURANCE CORPORATION; and LIBERTY INSURANCE CORPORATION,<br><br>            Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) CAUSE NO.:4:26-cv-0085<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT FOR DAMAGES AND JURY DEMAND

Come now Jane Doe, individually, and John Doe, a minor, by and through his parent and next friend, Jane Doe, by counsel Stephen M. Wagner and Laura W. Swafford of Wagner Reese, LLP, and for their cause of action against Jennings County School Corporation, Scott Alcorn, in his individual capacity, Tanya Perry, in her individual capacity, LM Insurance Corporation, and Liberty Insurance Corporation, allege and state as follows:

## JURISDICTION AND VENUE

1.      Plaintiffs assert civil rights claims for violations of the Fourteenth Amendment of the Constitution of the United States of America made actionable pursuant to 42 U.S.C. § 1983. Plaintiffs assert a claim for damages pursuant to Section 504 of the Rehabilitation Act of 1973 (hereinafter "Section 504") for the Jennings County School Corporation's deliberate indifference to the bullying, harassment and sexual abuse visited upon John Doe by another student. Plaintiffs also assert state law claims for negligence, negligent infliction of emotional distress, and

1

negligence per se.   Finally, Plaintiffs file a declaratory judgment action pursuant to 28 U.S.C. §§ 2201-2202 against Jennings County School Corporation and its liability insurance carriers, LM Insurance Corporation and Liberty Insurance Corporation, as well as the other Defendants as interested parties, to determine coverage for Plaintiffs' claims under the liability insurance policies issued to the Jennings County School Corporation.

2.      Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343 as well as 42 U.S.C. §§ 1983.   Plaintiffs invoke the supplemental jurisdiction of this Court to hear and decide the declaratory judgment action and Plaintiffs' claims arising under state law pursuant to 28 U.S.C. §1367.

3.      The acts and omissions giving rise to the Plaintiffs' claims arose in the City of North Vernon, Jennings County, Indiana.  Thus, pursuant to 28 U.S.C. §1391(b)(2), venue is proper in the United States District Court, Southern District of Indiana, New Albany Division.

## PARTIES

4.      At all times relevant herein, Plaintiff Jane Doe was the mother and natural guardian of her son, John Doe, a minor, age 7.  Plaintiffs reside in North Vernon, Jennings County, Indiana.

5.      Defendant, Jennings County School Corporation (hereinafter "JCSC"), is a school district in Jennings County, Indiana, which operates elementary schools, a middle school, and a high school, including Sand Creek Elementary School.

6.      At all times relevant, Defendant, Scott Alcorn (hereinafter "Alcorn"), was the bus driver operating a special needs transport bus for JCSC.

7.      At all times relevant, Defendant, Tanya Perry (hereinafter "Perry"), was a bus monitor on the special needs transport bus driven by Alcorn.

8.      At all times herein, Defendants Alcorn and Perry were acting under color of law.

9.     At all times herein, Defendants Alcorn and Perry were acting within the course and scope of their employment for JCSC.

10.    Defendant, LM Insurance Corporation, is an insurance company that is licensed to write insurance policies in Indiana.  LM Insurance Corporation is a corporation organized and existing under the laws of the State of Massachusetts and is thus a citizen of Massachusetts.

11.    Defendant, Liberty Insurance Corporation, is an insurance company that is licensed to write insurance policies in Indiana.  Liberty Insurance Corporation is a corporation organized and existing under the laws of the State of Massachusetts and is thus a citizen of Massachusetts.

## FACTUAL ALLEGATIONS

12.    At all relevant times, John Doe was a seven-year-old autistic child who was enrolled as a second-grade student at Sand Creek Elementary School, an elementary school operated by JCSC.

13.    Prior to his enrollment at Sand Creek Elementary School, John Doe was diagnosed with autism spectrum disorder, a disability that substantially limits one or more major life activities, including but not limited to learning, communicating, interacting with others, and self-regulation.

14.    Due to his autism diagnosis, JCSC placed John Doe on an Individualized Education Program ("IEP") plan.

15.    The Rehabilitation Act of 1973, commonly referred to as Section 504, is a federal nondiscrimination statute. The purpose of the Act is to prohibit discrimination and to ensure that disabled students have educational opportunities and benefits equal to nondisabled students.

16.    A student is eligible for a Section 504 Plan if the student has a physical or mental impairment that substantially limits a major life activity, such as learning, walking, seeing, hearing, speaking, breathing, working, or performing manual tasks.

17. Under Section 504, educational agencies are required to provide appropriate and safe transportation for students with disabilities.

18. At all relevant times, John Doe was a student with a disability as defined by Section 504.

19. Accordingly, John Doe was qualified to participate in and benefit from the education programs, services, and activities offered by JCSC, including transportation services, with reasonable accommodations.

20. According to John Doe's IEP, "[s]pecial transportation will be provided while [John Doe] attends school in person."

21. Due to his disability, Defendants transported John Doe to and from Sand Creek Elementary on a JCSC bus designated as "special transportation" under John Doe's IEP.

22. The special transport bus was driven by Defendant Alcorn and monitored by Defendant Perry and transported JCSC students, ages pre-school through middle school, from their homes to their respective schools.

23. Defendants were fully aware of Plaintiff's autism, behavioral profile, and safety needs, including Plaintiff's difficulty in protecting himself, interpreting social cues, and responding to threats or aggression.

24. Defendants also knew of the aggressive conduct of a fifteen-year-old student with an imposing physical stature and known behavioral problems, hereinafter referred to as "Student 2."

25. Due to his autism diagnosis, John Doe had difficulty sitting still and had occasionally gotten up from his seat during transport to school.

26. Defendants had restraints available to keep John Doe in his seat during transport on the bus, but instead of using these restraints, Defendants intentionally required and assigned John Doe to sit in a bus seat with Student 2 so he could physically block and restrain John Doe from getting up from his seat during transport.

27. Defendants required and assigned John Doe to sit in the window seat which in effect trapped John Doe in his seat when Student 2repeatedly assaulted him as described herein.

28. The assigned bus seat for Student 2 and John Doe was in the back of the bus.

29. Defendants assigned Student 2 to a seat in the back of the bus because he had previously picked on another student who was assigned a seat in the front of the bus.

30. John Doe and Student 2 were the only students on the bus required to share a seat.

31. Between February 27, 2025, and April 16, 2025, Student 2 repeatedly physically and sexually assaulted John Doe on the JCSC special transport school bus.

32. These assaults occurred while Defendant Alcorn was operating the JCSC special transport school bus and when Defendant Perry was monitoring the bus, except for the assaults that occurred on February 28, 2025, when a different bus monitor was filling in for Defendant Perry.

33. These assaults were also captured on at least two of the video surveillance cameras placed within the bus to monitor the students.

*February 27, 2025 (Occurrence 1)*

34. On February 27, 2025, during the afternoon bus trip on a JCSC special transport bus driven by Defendant Alcorn and monitored by Defendant Perry, Student 2 bullied and physically assaulted John Doe.

35.    On February 27, 2015, from 3:02 PM until 3:04 PM, Student 2 physically assaulted John Doe by punching him in the stomach, grabbing him forcefully, and pushing John Doe around their shared seat.

36.    This physical assault occurred while Defendant Alcorn was operating the bus and Defendant Perry was in front of the bus, walking down the aisle of the bus, and while she was seated in a bus seat two rows in front of Student 2 and John Doe.

37.    At 3:13 PM, Student 2 again assaulted John Doe.  Specifically, Student 2 punched John Doe in the face multiple times. He also punched John Doe in the chest, elbowed him in the stomach and side, and grabbed John Doe, physically controlling him.

38.    This second round of physical assault occurred while Defendant Alcorn was operating the bus and Defendant Perry was at the front of the bus, looking forward, and not monitoring the children on the bus.

*February 28, 2025 (Occurrence 2)*

39.    On February 28, 2025, during the afternoon bus trip, Defendant Perry was not on the bus.  Instead, an unknown JCSC employee was on the bus serving as the monitor.

40.    During this afternoon bus trip, Student 2 bullied, physically assaulted, sexually assaulted, and anally raped John Doe.

41.    From 2:51 PM to 2:53 PM, Student 2 pushed John Doe around in the seat and against the bus window, grabbing his nose and elbowing him.

42.    During this time, John Doe put his hands over his face in an attempt to protect himself.

43.     While this assault was occurring, Defendant Alcorn was driving the bus, not monitoring the children, and the unknown bus aide was sitting in the front of the bus, looking forward, and also not monitoring the children.

44.     From 3:05 PM to 3:09 PM, Student 2 digitally raped John Doe at least three separate times.

45.     During these sexual assaults, Defendant Alcorn was driving the bus, not monitoring the children, and the unknown bus aide was sitting in the front of the bus, looking forward, and again, not monitoring the children.

*March 3, 2025 (Occurrence 3)*

46.     During the afternoon bus trip on a JCSC special transport bus, driven by Defendant Alcorn and monitored by Defendant Perry, Student 2 bullied, physically assaulted, and sexually assaulted John Doe.

47.     From 3:21 PM to 3:22 PM, Student 2 forcefully pushed John Doe's hand onto his penis and then forcefully moved John Doe's hand/arm up and down to masturbate himself.

48.     During this assault, Defendant Perry was sitting in the front of the bus, looking forward, and failing to monitor the children.

49.     During this assault, Defendant Alcorn was driving the bus and at one point, stopped the bus to drop another student off the bus, all the while failing to monitor the children.

*March 10, 2025 (Occurrence 4)*

50.     On March 10, 2025, during the afternoon bus trip on a JCSC special transport bus, driven by Defendant Alcorn and monitored by Defendant Perry, Student 2 bullied, physically assaulted, sexually assaulted, and raped (orally and anally) John Doe.

51.     From 3:14 PM to 3:18 PM, Student 2 digitally penetrated John Doe's anus while John Doe put his hands over his face.

52.     Student 2 then forcefully pushed John Doe's hand onto his penis and then forcefully moved John Doe's hand/arm up and down to masturbate himself.

53.     Student 2 then pushed John Doe's head into his lap, pushing John Doe's mouth onto Student 2's penis. Student 2 continued to hold John Doe's neck down to ensure John Doe's mouth remained on his penis.

54.     John Doe attempted to sit up, but Student 2 pushed John Doe's head back down toward his penis. After a period of time, Student 2 released John Doe, and John Doe wiped his mouth.

55.     During these nearly five minutes of abuse when Student 2 would have been visible to the driver and monitor and John Doe would not have been visible, Defendant Perry is seen on camera sitting in the front of the bus, looking forward, and failing to monitor the children.

56.     At one point during the abuse, while Student 2 was holding John Doe's head down onto his penis, Defendant Perry stood up and walked back a few seats from the front of the bus, but she failed to walk to the back of the bus to view the only seat containing two children, one of whom—John Doe—was not visible to her because he was being held down.

57.     Additionally, when Student 2 was forcing John Doe to masturbate him and when Student 2 pushed John Doe's head into his crotch, Defendant Alcorn stopped the bus to drop off another student. Even when the bus was stopped, neither Defendant Alcorn nor Defendant Perry moved to the back of the bus to visualize John Doe and Student 2.

58.    At 3:29 PM on March 10, 2025, Student 2 abused John Doe again by putting his fingers inside John Doe's mouth and then forcefully pushing a finger deep into John Doe's mouth and throat Student 2 then kissed John Doe on the lips.

59.    This second incident occurred while Defendant Perry was seated at the front of the bus, looking forward and not monitoring the children. Additionally, it occurred while the bus was stopped at a bus stop, at which time Defendant Alcorn also failed to monitor the children on the bus.

**March 13, 2025 (Occurrence 5)**

60.    On March 13, 2025, during the afternoon bus trip on a JCSC special transport bus, driven by Defendant Alcorn and monitored by Defendant Perry, Student 2 bullied, physically assaulted, sexually assaulted, and raped (orally) John Doe.

61.    From 3:17 PM to 3:21 PM, Student 2 physically assaulted John Doe by pushing and slapping John Doe.

62.    Then, Student 2 put his mouth on John Doe's penis.

63.    Shortly thereafter, Student 2 pushed John Doe's head into his own lap, forcing John Doe's mouth onto Student 2's penis. Student 2 continued to hold John Doe's neck down to ensure John Doe's mouth remained on his penis.

64.    After a period of time, Student 2 released John Doe, and John Doe wiped his mouth multiple times.

65.    Next, Student 2 forcefully pushed John Doe's hand onto his penis and then forcefully moved John Doe's hand and arm up and down to masturbate himself.

66.    Once Student 2 removed his hand from John Doe's hand, John Doe wiped his hands.

67.     Student 2 then adjusted his pants, picked up his belongings from the seat next to them, and played on his phone until he got off the bus at 3:23 PM.

68.     During the abuse, Defendant Perry stood at the front of the bus, looking forward. She never moved to the back of the bus or made any attempt to visualize the only seat containing two students, one of whom at various times would not have been visible to her as sexual assaults were taking place.

69.     Additionally, during the abuse, Defendant Alcorn was operating the bus, not monitoring the children. At one point during the abuse, when Student 2 had John Doe masturbate him, the bus was stopped, at which time Defendant Alcorn again failed to monitor the students.

### *March 17, 2025 (Occurrence 6)*

70.     On March 17, 2025, during the afternoon bus trip on a JCSC special transport bus, driven by Defendant Alcorn and monitored by Defendant Perry, Student 2 bullied, physically assaulted, sexually assaulted, and raped (orally and anally) John Doe.

71.     From 3:28 PM through 3:36 PM, Student 2 pushed John Doe's head into his lap, forcing John Doe's mouth onto Student 2 's penis. Student 2 released John Doe, and John Doe wiped his mouth.

72.     The above assaults all occurred while Defendant Perry stood at the front of the bus not paying attention to the only two students seated together, with one—John Doe—not visible to her.

73.     Then, Student 2 forcefully pushed John Doe's hand onto his penis and then forcefully moved John Doe's hand and arm up and down to masturbate himself.

74.     During this assault, Defendant Perry was sitting in the front of the bus, looking forward and failing to monitor the students.

75.     Once Student 2 removed his hand from John Doe's hand, Student 2 licked his fingers and then lifted John Doe up in his seat and digitally raped him.

76.     While this was happening, John Doe put his hood up on his sweatshirt and braced himself against the back of the seat.

77.     This rape occurred at a bus stop, at which time Defendant Alcorn was not driving the bus nor monitoring the children. At this juncture, Defendant Perry was standing at the front of the bus, also failing to monitor the children.

78.     Student 2 stopped raping John Doe when Defendant Perry briefly walked to the back of the bus, but Defendant Perry quickly sat down in a seat two rows in front of Student 2 and John Doe.

79.     At that time, Student 2 licked his fingers again and digitally raped John Doe for a second time.

80.     At 3:36 PM, Student 2 stood up over John Doe and put his penis into John Doe's rectum, anally raping him. Student 2 then pushed John Doe's head into his crotch, forcing John Doe's mouth onto his penis.

81.     Student 2 then released John Doe and John Doe wiped his mouth.

82.     During this 3:36 PM assault, Defendant Perry was back at the front of the bus, looking forward as the bus stopped at a bus stop.

83.     Both Defendant Perry and Defendant Alcorn failed to supervise or monitor the children.

 ***March 19, 2025 (Occurrence 7)***

84. On March 19, 2025, during the morning bus trip on a JCSC special transport bus, driven by Defendant Alcorn and monitored by Defendant Perry, Student 2 bullied, physically assaulted, sexually assaulted, and raped (orally and anally) John Doe.

85. Multiple times from 7:30 AM to 7:36 AM, Student 2 punched John Doe in his head and on his legs and grabbed John Doe's head and pushed him around.

86. At one point, John Doe tried to stand up, and Student 2 pushed him back down into his seat and elbowed him.

87. During this physical abuse, Defendant Perry was at the front of the bus, sitting and occasionally standing, but always looking forward and not monitoring the children behind her.

88. Additionally, during this physical abuse, the bus was at a bus stop, at which time Defendant Alcorn also failed to monitor the children.

89. From 7:51 AM through 7:54 AM, Student 2 forcefully pushed John Doe's hand onto his penis and then forcefully moved John Doe's hand and arm up and down to masturbate himself.

90. During the assault, John Doe put his other hand over his face. Student 2 then readjusted himself and gave John Doe his hand back.

91. Shortly thereafter, Student 2 again grabbed John Doe's hand and put it on his penis and forcefully moved John Doe's hand/arm up and down to masturbate himself.

92. During this sexual assault, Defendant Perry was sitting at the front of the bus in her seat. She never stood up or turned around in her seat to monitor the children. Defendant Alcorn was driving the bus, not monitoring the children.

93. At 8:00 AM, Student 2 digitally raped John Doe.

94. During the rape, John Doe put his hands over his eyes.

95.     This rape occurred while Defendant Alcorn was driving the bus, not monitoring the children, and while Defendant Perry was two rows in front of Student 2 and John Doe, standing but looking forward and not monitoring the children behind her, including the only two assigned to the same bench seat.

**April 1, 2025 (Occurrence 8)**

96.     On April 1, 2025, during the morning bus trip on a JCSC special transport bus, driven by Defendant Alcorn and monitored by Defendant Perry, Student 2 bullied, physically assaulted, sexually assaulted, and raped (orally and anally) John Doe.

97.     From 7:24 AM through 7:35 AM, Student 2 first licked and spit on the fingers of his right hand and then masturbated Student 2 then wiped his right hand on the seat in front of him.

98.     Next, Student 2 forcefully pushed John Doe's hand onto Student 2's penis and then forcefully moved John Doe's hand and arm up and down to masturbate himself.

99.     John Doe attempted to get his hand away, but Student 2 regained control of John Doe's hand and pushed it back onto his penis and forcefully moved John Doe's hand and arm up and down to masturbate himself again.

100.    While this occurred, John Doe turned his body away from Student 2 to face the window.

101.    During this sexual abuse, Defendant Perry was at the front of the bus standing but always looking forward and not monitoring the children.

102.    Additionally, during this part of the abuse, the bus was at a bus stop, at which time Defendant Alcorn also failed to monitor the children.

103. At 7:28 AM, Student 2 pushed John Doe's head into Student 2's lap, forcing John Doe's mouth onto Student 2's penis. Student 2 released John Doe, and John Doe wiped his mouth.

104. Student 2 then licked or spit on the fingers on his left hand and again forcefully pushed John Doe's hand onto his penis and then forcefully moved John Doe's hand and arm up and down to masturbate himself.

105. Student 2 released John Doe's hand, and Student 2 wiped his hand on the back of the seat in front of him as John Doe rubbed his hands together.

106. Student 2 then forcefully grabbed John Doe and turned him to face the window. Student 2 licked his fingers and then lifted John Doe up in his seat and digitally raped John Doe by inserting his finger into John Doe's anus.

107. During the digital rape, Student 2 had his left hand on John Doe's shoulder to control him. Student 2 then removed his fingers from John Doe's anus and wiped his hand on John Doe's back.

108. Student 2 then masturbated himself.

109. Student 2 then attempted to put John Doe on his lap to anally rape him, but then continued to masturbate himself.

110. Student 2 then forcefully put John Doe on his lap and anally raped him.

111. Student 2 removed John Doe from his lap, licked his fingers, and digitally raped John Doe again.

112. While this digital rape occurred, John Doe covered his face with his hand, and Student 2 put his left arm around John Doe's neck, forcing him into his seat.

113. At 7:33 AM, Student 2 licked his fingers, masturbated himself, then grabbed John Doe, and put him on his lap to anally rape him once more.

114. During the anal rape, Student 2 kissed the back of John Doe's head. Student 2 then masturbated himself again, while John Doe was on his lap.

115. Student 2 then ejaculated on the back of the seat and wiped it off.

116. At 7:35 AM, Student 2 punched himself in the face.

117. During the above-described sexual abuse, Defendant Perry was at the front of the bus, sitting and occasionally standing. Defendant Perry looked at the back of the bus only once but failed to move up and down the bus aisle or reposition herself to view the only two students seated together. Defendant Perry was not monitoring the children.

118. Additionally, during part of the abuse, the bus was at a bus stop, at which time Defendant Alcorn also failed to monitor the children.

**April 3, 2025 (Occurrence 9)**

119. On April 3, 2025, during the morning bus trip, from 7:34 AM through 7:44 AM, on a JCSC special transport bus, driven by Defendant Alcorn and monitored by Defendant Perry, Student 2 bullied, physically assaulted, sexually assaulted, and raped (orally and anally) John Doe.

120. Student 2 first masturbated himself.

121. Student 2 then lifted John Doe up in his seat and digitally raped him at least two times.

122. While he was being digitally raped, John Doe braced himself on the bus window.

123. Next, Student 2 forcefully pulled John Doe closer to him, grabbed John Doe's hand, and placed it onto his penis, and then forcefully moved John Doe's hand and arm up and down to masturbate himself.

124. Student 2 released John Doe and then pushed John Doe's head into his lap, forcing John Doe's mouth onto Student 2's penis.

125.    Student 2 released John Doe and continued to masturbate.

126.    Student 2 then pushed John Doe to lean forward and digitally penetrated his anus. John Doe lifted upwards during the anal rape.

127.    Student 2 removed his finger and smelled his hand, then he digitally raped John Doe at least two more times.

128.    During these rapes, from approximately 7:39 AM to 7:40 AM, John Doe attempted to stand up to attract the attention of the Perry and Alcorn. In response, Defendant Alcorn yelled at John Doe to sit down.

129.    Defendant Alcorn did not stop the bus or ask the bus monitor to further investigate why John Doe was attempting to stand up.

130.    At 7:40 AM, Student 2 touched John Doe's genitals and untied his pants. Student 2 again digitally raped John Doe while pulling John Doe down with his left hand.

131.    Student 2 removed his fingers from John Doe's rectum and then forced his fingers into John Doe's mouth, pushing John Doe's head backwards and forcing his fingers in and out of John Doe's mouth.

132.    Student 2 then wiped off his fingers on the bus seat and then on John Doe.

133.    Student 2 licked his fingers again and then wiped them on the back of the bus seat.

134.    After the abuse stopped, John Doe spent the rest of the bus ride looking out the window.

135.    During this abuse, Defendant Perry was at the front of the bus, sitting and occasionally standing. Defendant Perry also walked toward the middle of the bus to check on other students, but failed to walk to the back of the bus to the only seat with two children in it. Defendant Perry failed to even look to the back of the bus.  Defendant Perry was not monitoring the children.

136.    Additionally, during part of the abuse, the bus was at a bus stop, at which time Defendant Alcorn also failed to monitor the children.

***April 4, 2025 (Occurrence 10)***

137.    On April 4, 2025, during the morning bus trip, from 7:36 AM through 7:48 AM, on a JCSC special transport bus, driven by Defendant Alcorn and monitored by Defendant Perry, Student 2 bullied, physically assaulted, sexually assaulted, and raped (orally and anally) John Doe.

138.    First, Student 2 grabbed John Doe's head and pushed it into his lap, then pulled John Doe back upright, and then pushed his head back into his lap. Student 2 released John Doe and started to play with his phone.

139.    This physical abuse occurred while Defendant Perry was seated near the front of the bus.  At one point, Defendant Perry stood up and moved to a seat at the very front of the bus. However, she never turned her head to visually monitor the children at the back of the bus.

140.    At approximately 7:39 AM, Student 2 adjusted his pants and grabbed John Doe's head again and forced his mouth onto Student 2's penis. Student 2 then pushed John Doe upright again and then forced John Doe's mouth back onto his penis.

141.    When Student 2 released John Doe, allowing him to sit upright, John Doe wiped his mouth.

142.    At one point during this sexual assault, Defendant Perry stood up and walked down the aisle a few seats before walking back to the front of the bus. However, Defendant Perry failed to walk to the back of the bus to view the only seat containing two children.

143.    Student 2 then masturbated himself by grabbing John Doe's hand and placing it onto his penis.

144.    While Student 2 used John Doe's hand to masturbate himself, John Doe tried to no avail to resist the abuse by the older boy.

145.    Student 2 then digitally penetrated John Doe, began masturbating himself again, and then pulled John Doe onto his lap and anally raped him.

146.    After removing John Doe from his lap, Student 2 masturbated himself yet again.

147.    Student 2 then pushed John Doe's head into his lap again, forcing John Doe's mouth onto Student 2's penis.

148.    Student 2 released John Doe but continued to masturbate himself.

149.    Student 2 adjusted his shirt and pants and started playing on his phone, while John Doe pulled up the hood of his sweatshirt.

150.    Moments later, Student 2 grabbed John Doe's neck and shook him. John Doe stood up, and Student 2 pulled him back down.

151.    Student 2 adjusted himself and started playing on his phone again.

152.    During this abuse, Defendant Perry was at the front of the bus, sitting and occasionally standing, but always looking forward and not monitoring the children.

153.    Additionally, during part of the abuse, the bus was at a bus stop, at which time Defendant Alcorn also failed to monitor the children.

### April 7, 2025 (Occurrence 11)

154.    On April 7, 2025, during the afternoon bus trip, from 3:18 PM through 3:27 PM, on a JCSC special transport bus, driven by Defendant Alcorn and monitored by Defendant Perry, Student 2 bullied, physically assaulted, sexually assaulted, and raped (orally) John Doe.

155.    Student 2 forcefully grabbed John Doe's head and attempted to push it into his lap; however, John Doe attempted to fight back.

156.    For nearly two (2) minutes, Student 2 used force to turn John Doe's head, push John Doe's head down, and fight with John Doe to gain control over him.

157.    At one point, John Doe's foot was in the air and on the bus window as John Doe tried to resist Student 2.

158.    Student 2 finally released John Doe and then, moments later, forcefully pushed John Doe's hand onto his penis and then forcefully moved John Doe's hand and arm up and down to masturbate himself.

159.    John Doe pulled his hand away, and Student 2 grabbed it again, placing it back onto his penis, forcing John Doe to masturbate him.

160.    John Doe pulled his hand away, but then Student 2 forcefully grabbed John Doe's head and pushed it down toward his lap. Student 2 continued to push John Doe's head down onto his crotch.

161.    Student 2 released John Doe, waited approximately 20 seconds, and then pushed John Doe's mouth back onto his penis.

162.    Student 2 released John Doe again, but then immediately pushed John Doe's mouth back onto his penis, where he forcefully kept John Doe's mouth on his penis for nearly two minutes.

163.    During this sexual abuse, Defendant Perry was at the front of the bus, sitting and occasionally standing, but always looking forward and not monitoring the children.

164.    At one point, while Student 2 was holding John Doe's head down onto his penis, Defendant Perry stood up and walked back a few seats from the front of the bus, but she failed to walk to the back of the bus to view the only seat containing two children, one of whom would not have been visible to her.

165. Additionally, during part of the abuse, the bus was at a bus stop, at which time Defendant Alcorn also failed to monitor the children.

**April 8, 2025 (Occurrence 12)**

166. On April 8, 2025, during the afternoon bus trip on a JCSC special transport bus, driven by Defendant Alcorn and monitored by Defendant Perry, Student 2 bullied, physically assaulted, sexually assaulted, and raped (orally) John Doe.

167. From 3:13 PM through 3:17 PM, Student 2 pushed John Doe's mouth onto his penis, where he forcefully kept John Doe's mouth on his penis, on and off, for nearly four (4) minutes.

168. At 3:17 PM, John Doe attempted to sit up and remove his mouth from Student 2's penis, and Student 2 attempted to push John Doe back down, onto his penis, but was unsuccessful.

169. Student 2 then forcefully pushed John Doe's hand onto his penis and then forcefully moved John Doe's hand and arm up and down to masturbate himself.

170. During this sexual abuse, Defendant Perry was at the front of the bus, standing and occasionally sitting, but always looking forward and not monitoring the children.

171. At one point, while Student 2 was holding John Doe's head down onto his penis, Defendant Perry walked toward the back of the bus, but she failed to walk to the back of the bus to view the only seat containing two children.

172. Additionally, during part of the abuse, the bus was at a bus stop, at which time Defendant Alcorn also failed to monitor the children.

**April 10, 2025 (Occurrence 13)**

173.    On April 10, 2025, during the afternoon bus trip on a JCSC special transport bus, driven by Defendant Alcorn and monitored by Defendant Perry, Student 2 bullied, physically assaulted, sexually assaulted, and raped (orally and anally) John Doe.

174.    For nearly two minutes, starting at 3:09 PM, Student 2 punched John Doe in his back and head. John Doe stood up, but Student 2 pulled him back down into his seat.

175.    Student 2 then punched John Doe in his back again. John Doe stood back up, and Student 2 again pulled him back down.

176.    During this physical abuse, Defendant Perry was at the front of the bus, standing, looking forward, and not monitoring the children.

177.    At one point, Defendant Perry walked toward the back of the bus, but she failed to go all the way to the back of the bus to monitor John Doe and Student 2, the only two students seated together.

178.    From 3:23 PM to 3:32 PM, Student 2 assaulted John Doe again. First, Student 2 pulled John Doe over to him and forcefully kissed him, holding onto his neck.

179.    Student 2 then adjusted his pants and pushed John Doe's head into his lap, forcing John Doe's mouth onto Student 2's penis. Student 2 released John Doe and then kissed him again.

180.    Student 2 continued to kiss John Doe, forcing his tongue into his mouth, with his hand on the back of John Doe's head. Student 2 released John Doe, and John Doe wiped his mouth.

181.    Student 2 adjusted his pants and then again pushed John Doe's head into his lap, forcing John Doe's mouth onto Student 2's penis.

182.    Student 2 then released John Doe but quickly pushed John Doe's hand onto his penis and then forcefully moved John Doe's hand and arm up and down to masturbate himself.

183.    Student 2 then pulled John Doe onto his lap and anally raped him.

184.    During and after the rape, John Doe stood up to get the attention of Defendant Perry and Defendant Alcorn.

185.    John Doe succeeded in getting Defendant Perry's attention, but instead of investigating, she yelled at John Doe to sit down.

186.    Defendant Perry did not come to the back of the bus, and she completely failed to stop the rape that was occurring.

187.    Student 2 then put his arm around John Doe and kissed him multiple times for long periods of time, while also thrusting his tongue into John Doe's mouth.

188.    Student 2 also put his fingers into John Doe's mouth while holding John Doe's neck.

189.    During these assaults, Defendant Perry was at the front of the bus, standing and occasionally sitting, not monitoring the children.

190.    Additionally, during part of the abuse, the bus was at a bus stop, at which time Defendant Alcorn also failed to monitor the children.

### April 16, 2025 (Occurrence 14)

191.    On April 16, 2025, during the afternoon bus trip on a JCSC special transport bus, driven by Defendant Alcorn and monitored by Defendant Perry, Student 2 bullied, physically assaulted, sexually assaulted, and raped (orally and anally) John Doe.

192.    At 2:57 PM, Student 2 forced John Doe to drink from his water bottle by grabbing John Doe's head and pushing the water bottle into his mouth.

193.    This physical assault occurred while Defendant Perry was sitting in a seat two rows in front of Student 2 and John Doe, looking forward, not monitoring the students behind her.

194.    From 2:59 PM to 3:02 PM, Student 2 pushed John Doe's head into his lap, forcing John Doe's mouth onto Student 2's penis. Student 2 continued to apply force to John Doe's neck, ensuring John Doe's mouth remained on his penis.

195.    During this assault, Student 2 hit the back of John Doe's head at least three times.

196.    After nearly three minutes, Student 2 released John Doe, and John Doe wiped his mouth and turned to look out the window.

197.    During this rape, Defendant Perry was standing at the front of the bus, looking forward. At one point, she started to walk toward the middle of the bus, but she failed to walk all the way to the back of the bus to the only seat with two children.

198.    At 3:04 PM, Student 2 started to touch John Doe's anus.

199.    John Doe stood up, and Student 2 pulled him back down into their seat. Student 2 then masturbated himself.

200.    At 3:05 PM, Student 2 pulled John Doe onto his lap and anally raped John Doe while applying force to John Doe's shoulders.

201.    During this rape, John Doe braced himself on the back of the seat.

202.    At 3:06 PM, Defendant Perry saw John Doe on Student 2's lap and asked Student 2 what was going on.

203.    Defendant Perry separated Student 2 from John Doe and asked for the videotapes to be pulled.

204.    Before 3:06 PM, Defendant Perry was standing near the front of the bus, not looking toward the back of the bus to monitor the students.

205.    As a result of the events of April 16, 2025, Student 2 was arrested, charged and eventually convicted on April 1, 2026, of two (2) counts of felony rape, two (2) counts of

attempted felony rape,  one (1) count of felony child molesting; one (1) count of felony attempted child molesting, two (2) counts of felony sexual battery, two (2) counts of attempted felony sexual battery, one (1) count of felony criminal confinement, and one (1) count of misdemeanor public indecency.

## CLAIMS FOR RELIEF

### Count 1 – Plaintiff John Doe's Negligence Claims against Defendant JCSC

206.    Plaintiffs hereby incorporate by reference paragraphs 1 through 205 of their Complaint for Damages and Jury Demand as if fully set forth herein.

207.    In accordance with Indiana statute, Defendants were timely served by certified mail with fourteen (14) individualized Notices of Tort Claim for each occurrence set forth above.

208.    Pursuant to Indiana statute, the Plaintiff's tort claims have been constructively denied as Defendant JCSC has had more than ninety (90) days to investigate the claims but failed to accept Plaintiff's claims in full.

209.    At all relevant times, Defendants Alcorn and Perry were employees of the JCSC acting in their course and scope of employment.  As such, the JCSC is liable for any negligent acts of its employees under the doctrine of *respondeat superior*.

210.    Defendant JCSC is also independently liable for John Doe's injuries and damages as a result of its negligent acts and omissions, including but not limited to the failure to train its bus drivers and monitors and failing to implement policies to keep special needs children safe while being transported on District buses.

211. At all relevant times, while under the exclusive control and supervision of JCSC, John Doe suffered personal injuries due to the negligent actions and inactions by JCSC and its employees on the fourteen (14) separate and distinct bus rides.

212. Despite the multiple incidents of physical assault, sexual assault, and rape that occurred between February 27, 2025, and April 16, 2025, Defendant failed to take appropriate action to protect John Doe.

213. Defendant owed a duty to John Doe to exercise reasonable care in providing school transportation.

214. Defendant also had a duty to protect John Doe from foreseeable harm while he was in their custody and care, including during transportation on the school bus.

215. This duty was heightened given John Doe's status as a nonverbal autistic child requiring special education services.

216. Defendant knew or should have known that Student 2 posed a danger to John Doe based on his known behavioral problems and the significant age difference between them.

217. Defendant knew or should have known that John Doe, a seven (7) year old autistic child, was particularly vulnerable and required additional protection and supervision.

218. Defendant knew or should have known that John Doe, because of his young age, autism, and communication and self-advocacy limitations, was unable to protect himself, escape the situation, or effectively seek help during the multiple physical and sexual assaults.

219. Defendant also knew or should have known of prior incidents of behavioral and/or aggressive conduct by Student 2, who had a history of behavioral issues.

220. Despite this knowledge, Defendant failed to implement adequate transportation procedures, supervision, and seating arrangements to ensure Plaintiff's safety on the bus.

221.    Defendant failed to properly supervise and protect John Doe.

222.    Defendant also failed to intervene promptly and effectively to stop the assaults, failed to separate the students, and failed to provide immediate assistance and protection to John Doe.

223.    Defendant and its employees were negligent, careless, grossly negligent, and displayed an indifferent regard for the safety of John Doe, including but not limited to:

a.    Failing to transport John Doe in a safe manner;

b.    Failing to implement and follow IEP requirements for safe accommodations for students with disabilities, such as John Doe;

c.    Failing to have a properly trained bus driver and bus monitor with John Doe during bus transportation;

d.    Failing to transport John Doe in a safe manner in light of his disabilities;

e.    Failing to provide adequate supervision of the students on the special transportation bus;

f.    Requiring John Doe, a 7-year-old nonverbal autistic child, to be seated in the same seat with Student 2, a 15-year-old student with known behavioral problems;

g.     Requiring John Doe and Student 2 to be the only students required to share a seat on the bus;

h.    Entrapping John Doe in his seat by requiring and assigning Student 2 to sit on the outside of the seat;

i.    Failing to intervene promptly to prevent the physical and sexual assaults;

j.    Failing to investigate when John Doe attempted to stand up during assaults;

k.  Failing to take appropriate action despite multiple incidents occurring over several months;

l.  Failing to properly supervise and monitor the students on the bus;

m. Failing to monitor the surveillance videos on the bus at reasonable intervals; and

n.  Failing to maintain any written safety rules and policies and procedures to keep students safe on the bus.

224. Additionally, Defendant, JCSC, negligently hired, supervised, trained, and retained Defendants Alcorn and Perry.

225. Defendant JCSC, through the actions and inactions of Alcorn and Perry, negligently inflicted emotional distress upon John Doe, causing him injuries and damages.

226. As a direct and proximate result of Defendant's breaches of its duty of care, John Doe was physically and sexually assaulted on fourteen (14) different bus trips and suffered and continues to suffer physical pain, emotional distress, anxiety, loss of educational benefit, regression in skills, and loss of enjoyment of life.

**Count II – Jane Doe's Negligence Claims against Defendant JCSC**

227. Plaintiffs hereby incorporate by reference paragraphs 1 through 226 of their Complaint for Damages and Jury Demand as if fully set forth herein.

228. In accordance with Indiana statute, Defendant was timely served by certified mail with a fourteen (14) individualized Notices of Tort Claim for each occurrence described above on behalf of Plaintiff, Jane Doe.

229. Pursuant to Indiana statute, the Plaintiff's tort claims have been constructively denied as Defendant has had more than ninety (90) days to investigate the claims but failed to accept Jane Doe's claims in full.

230. As a result of these occurrences described herein, John Doe, Jane Doe's minor son, sustained significant physical and mental injuries resulting from being sexually and physically assaulted on fourteen (14) separate occasions while in the custody and care of the Defendant.

231. Accordingly, Defendant is liable to Jane Doe under Indiana law for the emotional distress she suffered as a result of the Defendant's conduct, as described herein, for the negligent infliction of emotional distress visited upon her, pursuant to the Indiana Supreme Court decision in *K.G. v. Smith,* 178 N. E. 3d 300 (Ind. 2021).

232. As a direct and proximate result of the Defendant's wrongful acts and omissions, Jane Doe suffered extreme emotional distress upon learning that her son, John Doe, had been sexually and physically assaulted on the bus, in the presence of a bus driver, bus monitor, and at least two (2) cameras, on at least fourteen (14) separate bus trips.

233. As a direct and proximate result of the wrongful acts and omissions of Defendant and its employees as described herein, Plaintiff, Jane Doe, has received counseling and continues to suffer from shock, extreme emotional distress, and humiliation.

**Count III – John Doe's Section 1983 Claims against Defendants Alcorn and Perry**

234. Plaintiffs hereby incorporate by reference paragraphs 1 through 233 of their Complaint for Damages and Jury Demand as if fully set forth herein.

235. The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."

236. John Doe's due process rights were violated by the actions and inactions of Alcorn and Perry, and the deprivation of John Doe's rights resulted in him being physically and sexually abused by Student 2 on at least fourteen (14) separate occasions.

237. By their affirmative acts, Defendants created or increased a danger to John Doe.

28

238.    Specifically, Alcorn and Perry, knowing that John Doe was an autistic 7-year-old, engaged in the following affirmative acts which placed John Doe in danger:

a.    Mandated that John Doe sit with Student 2, a fifteen-year-old student with an imposing physical stature and known behavioral problems, together in a seat on the bus;

b.    Mandated that Student 2sit on the outside of the bus seat which trapped John Doe in his seat;

c.    Mandated that John Doe continue to sit with Student 2 as he repeatedly physically and sexually assaulted him; and

d.    Violated John Doe's IEP.

239.    After placing John Doe in danger, Defendants Alcorn and Perry, failed to protect him.

240.    Specifically, Defendants Alcorn and Peery:

a.    Failed to properly supervise Student 2 and John Doe while they were seated in a bus seat together;

b.    Failed to take appropriate safety measures while Student 2and John Doe were seated together, including walking the bus aisle, facing backwards on the bus to monitor the students, and investigating instances when either Student 2 or John Doe were not sitting up and visible to the bus driver and monitor;

c.    Failed to periodically monitor the bus video to discover the abuse; and

d.    Failed to inspect the bus to make sure students were safe.

241.    As a direct and proximate result of Defendants Alcorn's and Perry's failure to protect John Doe, he was physically and sexually abused multiple times on at least fourteen (14) bus trips between February 28, 2025, and April 16, 2025.

242.    As a direct and proximate result of Defendants Alcorn's and Perry's failure to protect John Doe, he sustained severe physical and emotional damages.

243.    Defendants Alcorn and Perry were deliberately indifferent to the known risk of an assault occurring.

244.    Through their actions, Defendants Alcorn and Perry turned a potential danger (the risk of physical and sexual abuse) into reality.

245.    In light of Defendants Alcorn's and Perry's knowledge (i) that John Doe was particularly vulnerable and required additional protection and supervision because of his young age, his autism, and his communication and self-advocacy limitations, (ii) of John Doe's inability to effectively seek help during the multiple physical and sexual assaults, (iii) of Student 2's behavioral issues and aggressiveness, the risk of John Doe being physically or sexually assaulted was entirely foreseeable to Defendants.

246.    The actions of Defendants Alcorn and Perry as described herein—forcing a seven (7) year old autistic student to sit with an older student with known behavioral problems and then failing to supervise the students—resulted in John Doe being brutally physically and sexually assaulted on at least fourteen (14) separate occasions. These actions shock the conscience.

247.    By forcing John Doe to sit next to Student 2 with no transportation safety rules or policies or procedures in place, Defendants Alcorn and Perry knowingly disregarded an excessive risk to his health and safety and knowingly subjected him to pain, physical injury, humiliation, and

mental distress, all of which violated John Doe's rights under the Fourteenth Amendment to the United States Constitution.

248.    As a direct and proximate result of the wrongful conduct of the Defendants, John Doe's constitutional rights were violated, and John Doe was physically and sexually assaulted on fourteen (14) different bus trips and suffered and continues to suffer physical pain, emotional distress, humiliation, anxiety, loss of educational benefit, regression in skills, and loss of enjoyment of life.

### Count IV – Claims against Defendant JCSC Pursuant to Section 504 of the Rehabilitation Act of 1973

249.    Plaintiffs hereby incorporate by reference paragraphs 1 through 248 of their Complaint for Damages and Jury Demand as if fully set forth herein.

250.    Upon information and belief, JCSC receives federal funding.

251.    Under Section 504 of the Rehabilitation Act, Defendant JCSS had a duty to make reasonable accommodations for John Doe's known limitations due to autism.

252.    JCSC, while acting under color of state law, knowingly violated John Doe's rights arising under § 504 of the Rehabilitation Act of 1973, in an outrageous and willful manner, by, *inter alia*, (i) failing to conduct an appropriate evaluation of Plaintiff's transportation needs; (ii) failing to properly plan for, coordinate, communicate, disseminate, and provide Plaintiff with all entitlements provided by the Rehabilitation Act, including but not limited to safe, proper, and appropriate transportation to and from school; and (iii) failing to properly and safely accommodate Plaintiff's handicap and disabilities.

253.    The actions of Defendant JCSC and its employees as described herein violated Section 504 and constituted deliberate indifference to disability-related bullying, harassment, and physical and sexual abuse, all of which violated John Doe's federally protected rights.

31

254.    As a direct and proximate result of the wrongful conduct of the Defendants, which violated Section 504, John Doe was physically and sexually assaulted on fourteen (14) different bus trips and suffered and continues to suffer physical pain, emotional distress, humiliation, anxiety, loss of educational benefit, regression in skills, and loss of enjoyment of life.  Plaintiffs, therefore, seek all damages allowed under federal law.

### COUNT V –  John Doe's Claims for Negligence Per Se against Defendant JCSC

255.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 254 as if fully set forth herein.

256.    Defendant JCSC's actions and inactions, and the actions and inactions of its employees as set forth herein, violated The Rehabilitation Act of 1973 (29 U.S.C. § 794).

257.    The Rehabilitation Act of 1973 was enacted to protect a class of persons which includes John Doe, a child with a disability.

258.    The Rehabilitation Act of 1973 was enacted, in part, to prevent disability-related bullying, harassment and abuse in an educational setting, the types of harms suffered by John Doe.

259.    Defendant JCSC's violation of this law was unjustified and thus constitutes negligence per se.

260.    As a direct and proximate result of the carelessness, negligence, and negligence per se of JCSC, John Doe was physically and sexually assaulted on fourteen (14) different bus trips and suffered and continues to suffer physical pain, emotional distress, humiliation, anxiety, loss of educational benefit, regression in skills, and loss of enjoyment of life.

WHEREFORE, Plaintiffs respectfully request judgment in their favor and against Defendants on Counts I - V as follows:

a.  Compensatory damages for John Doe on his state law claims in the amount of $700,000 for **each** of the fourteen (14) occurrences where he was physically and sexually assaulted, for a total of $9,800,000.

b.  Compensatory damages for Jane Doe on her state law claims in the amount of $700,000 for her emotional distress, mental anguish, and other damages resulting from the sexual and physical assaults visited upon her son;

c.  Compensatory damages for John Doe on his 42 U.S.C. § 1983 claim for the violation of his constitutional rights;

d.  Punitive damages against the Defendants Alcorn and Perry, individually, based on Plaintiff John Doe's 42 U.S.C. § 1983 claim to punish said Defendants for their callous or reckless indifference to his constitutional rights;

e.  An award of attorney fees and expenses on Plaintiff John Doe's 42 U.S.C. § 1983 claim pursuant to 42 U.S.C. § 1988;

f.  Trial by jury; and

g.  All other relief just and proper in the premises.

**Count VI – Declaratory Judgment Action against All Defendants**

261.  Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 260 as if fully set forth herein.

262.  LM Insurance Corporation issued a Commercial General Liability Insurance Policy Number TB5-Z51-293672-024 ("the CGL Policy") for the period August 1, 2024 through August 1, 2025 to Jennings County School Corporation ("JCSC").  A true and accurate copy of the CGL Policy is attached hereto as Exhibit 1.

263.   The CGL Policy provides:

1.   Insuring Agreement

a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

***

b.   This insurance applies to "bodily injury" and "property damage" only if:
    i.   The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
    ii.   The "bodily injury" or "property damage" occurs during the policy period;

264.   The CGL Policy also contains a Sexual Misconduct Liability Coverage Endorsement ("the Sexual Misconduct Endorsement") which provides:

We will pay those sums that the insured becomes legally obligated to pay as damages because of "sexual misconduct" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any "sexual misconduct" and settle any claim or "suit" that may result.

265.   The CGL Policy has per occurrence limits of $1,000,000 and aggregate limits of $2,000,000.

266.   The CGL Policy has a limit of $1,000,000 for each sexual misconduct and a sexual misconduct aggregate limit of $1,000,000.

267.   The CGL Policy contains a Public Entity Immunity and Tort Cap Preservation Endorsement which provides:

For any "Public Entity Liability" for which an insured is not fully immune pursuant to "Immunity or Tort Cap Law", but instead is subject to limits or caps pursuant to any applicable "Immunity or Tort Cap Law", this policy will pay no more than the applicable

34

federal or state law limit or cap, subject to the applicable Limits of Insurance shown on the Declarations page or applicable schedule of this policy.

268. Liberty Insurance Corporation issued an Umbrella Policy Number TH7-Z51-293672-074 ("the Umbrella Policy") to JCSC for the period August 1, 2024 to August 1, 2025. A true and accurate copy of the Umbrella Policy is attached hereto as Exhibit 2.

269. The Umbrella Policy contains the following:

**Sexual Misconduct Liability Coverage Limitation**
***
B.      When coverage is provided by underlying insurance and only for the purposes of coverage provided, if any, by this endorsement:

1.      The following amendments are made to SECTION I – COVERAGES:
        a.      The following is added to Paragraph 1:
We will pay on behalf of the insured those sums in excess of the retained limit that the insured becomes legally obligated to pay as damages because of **sexual misconduct** to which this insurance applies, but only if the **sexual misconduct** was not expected or intended from the standpoint of the insured, or committed with the knowledge, consent, direction or participation of the insured.

C.      For purposes of this endorsement, the following amendments are made to SECTION VII – DEFINITIONS:

1.      The following is added to Definition 16. Occurrence:
**Sexual misconduct**, a single act of misconduct or multiple, continuous, sporadic or related acts of misconduct committed by one person or two or more persons acting together toward another person or persons will be considered one **occurrence**, regardless of the number of persons making claims or bringing **suits.**

2. The following definition is added:
**Sexual misconduct** means any actual, alleged or threatened act of misconduct that is of a sexual nature and is committed by one person or two or more persons acting together toward another person or persons.
**Sexual misconduct** includes but is not limited to:
a.      Molestation, abuse;

b.    Assault, physical touching, contact;
c.    Harassment, advances;
d.    Victimization, exploitation, requests for favors;
e.    Coercion to engage in sexual activities;
f.    Exhibitionism, voyeurism;
g.    Verbal or non-verbal communication; or
h.    Showing, sharing or creating of text, pictures, drawings, audio, video or digital recording.

270.    The Umbrella Policy has per occurrence limits of $5,000,000 and aggregate limits of $5,000,000.

271.    The Umbrella Policy contains a Public Entity Immunity and Tort Cap Preservation Endorsement which provides:

**Public Entity Immunity and Tort Cap Preservation**

The following is added to SECTION III – LIMITS OF INSURANCE:
For any Public Entity Liability for which an insured is not fully immune pursuant to Immunity or Tort Cap Law but instead is subject to limits or caps pursuant to any applicable Immunity or Tort Cap Law, this policy will pay no more than the applicable federal or state law limit or cap, subject to the applicable Limits of Insurance shown on the Declarations page or applicable schedule of this policy.

272.    The Indiana Tort Claims Act ("ITCA") provides:

The combined aggregate liability of all governmental entities and of all public employees, acting within the scope of their employment and not excluded from liability under section 3 [IC 34-13-3-3] of this chapter does not exceed:

(1) for injury to or death of one (1) person in any one (1) occurrence:

\*\*\*

(C)    seven hundred thousand dollars ($700,000) for a cause of action that accrues on or after January 1, 2008; and

(2) for injury to or death of all persons in that occurrence, five million dollars ($5,000,000).

273. The ITCA contains no definition of "occurrence"; however, under the common definition and meaning of occurrence, each bus ride that involved abuse by Student 2 against John Doe was a separate occurrence as that term is commonly understood and used in the ITCA.

274. There is coverage of $1,000,000 under the CGL Policy for JCSC's liability for injuries to John Doe and Jane Doe arising from Student 2's assaults against John Doe that were of a sexual nature.

275. There is also coverage of $1,000,000 under the CGL Policy for JCSC's liability for injuries to John Doe and Jane Doe arising from assaults by Student 2 against John Doe that were not of a sexual nature.

276. There is coverage of $5,000,000 under the Umbrella Policy for JCSC's liability for injuries arising from Student 2's abuse of John Doe.

277. There is coverage for a total of $7,000,000 under the CGL and Umbrella Polices for the liability of JCSC and its employees acting in the course and scope of their employment for injuries arising from Student 2's assaults on John Doe.

278. An actual controversy has arisen concerning the limits of coverage available for JCSC's liability to Plaintiffs under the CGL Policy and under the Umbrella Policy.

WHEREFORE, Plaintiffs pray for a judgment declaring that:

   a. There is coverage of $1,000,000 under the CGL Policy for JCSC's liability for injuries to John Doe and Jane Doe arising from Student 2's assaults against John Doe that were of a sexual nature;

   b. There is coverage of $1,000,000 under the CGL Policy for JCSC's liability for injuries to John Doe and Jane Doe arising from the assaults by Student 2 against John Doe that were not of a sexual nature;

c.  There is coverage of $5,000,000 under the Umbrella Policy for JCSC's liability for injuries to John Doe and Jane Doe arising from Student 2's abuse of John Doe; and

d.  There is coverage for a total of $7,000,000 under the CGL and Umbrella Polices for JCSC's liability for the injuries arising from Student 2's assaults on John Doe; and

e.  For all other relief proper in the premises.

Respectfully submitted,

**WAGNER REESE, LLP**

/s/ *Stephen M. Wagner*
Stephen M. Wagner, #18248-49
Laura W. Swafford, #3792-29
11939 North Meridian Street, #100
Carmel, IN 46032
Tel: (317) 569-0000 / Fax: (317) 569-8088
LSwafford@WagnerReese.com
SWagner@WagnerReese.com

*Attorneys for Plaintiffs*

## JURY DEMAND

Plaintiffs, by counsel, hereby demand trial by jury against the Defendants on all issues set forth in this cause of action.

Respectfully submitted,

**WAGNER REESE, LLP**

/s/ *Stephen M. Wagner*
Stephen M. Wagner, #18248-49

*Attorney for Plaintiffs*